## Case No. 16,029.

### UNITED STATES v. PERALTA.

[Hoff. Dec. 190; 1 Cal. Law J. 345.]

District Court, N. D. California. 1863.[1]

MEXICAN LAND GRANTS — ABSENCE OF ARCHIVE EVIDENCE—SECONDARY EVIDENCE.

[Where the expediente was produced from the possession of the claimant, and bore as

[1] [Affirmed in 3 Wall. (70 U. S.) 434.]

its last entry an order of a suspicious appearance purporting to be a direction by the governor that a title issue, but there was no evidence whatever from the archives, and the parol evidence that a grant was, in fact, issued, was unsatisfactory, *held*, that the claim must be rejected, notwithstanding the fact that the alleged grantee had, without objection, entered upon the land. and occupied the same for about a year prior to the conquest of the country. Applying U. S. v. Castro, 24 How. (65 U. S.) 350. Distinguishing U. S. v. Alviso, 23 How. (64 U. S.) 318.]

[Claim by Maria Teodora Peralta for the Rancho Buacocha, 2½ square leagues, in Marin county.]

HOFFMAN, District Judge. The claim in this case is founded on an alleged grant by Pio Pico, made in the spring of 1846. The expediente which is produced by the claimant shows that in 1845 she petitioned the alcalde of San Rafael to obtain a report from the colindantes of a certain tract she desired to solicit from the government, in order that the report might accompany her petition to the governor for a grant of the land. On the same day the magistrate certifies that the colindantes had stated before him that the sobrante asked for was vacant and might be granted. On the 8th November, 1845, she presented a petition to the prefect, in which she set forth her previous application to the alcalde, and the report of that officer, and requesting him to take such further proceedings as might be necessary. This petition was referred by the prefect to the subprefect; and by the latter to the first judge of San Rafael. On the 29th November the first judge reports the land to be vacant. On the 20th December, Castro, the prefect, recommends to the governor that the title issue. And on the 18th February, 1845, the governor attaches to the expediente an order to that effect. The expediente containing all these documents is produced by the claimant. The archives contain no record or trace whatever of any of these proceedings. There seems no reason, however, to doubt the genuineness of any of the papers, except the last and most important of all, viz.: the order by the governor that the title issue. This order and the signature are evidently in Pico's handwriting; but his signature bears little resemblance to those elsewhere found in the archives, the uniform and striking peculiarities of which this court has had frequent occasion to comment on. But it resembles the mode of signing his name, and especially forming the letter "P," adopted by him at a much later period. No explanation is offered of the circumstance that the expediente is found in the claimant's possession. Had it ever reached the governor, and had he made the order for the issuance of the title, it is difficult to imagine how it found its way into the claimant's hands, and has since been preserved, while the title paper, which it is alleged was issued. has been lost. If, however, after obtaining Castro's recom-

mendation, the claimant procured the expediente from that officer in order to send it to the governor, and through accident or neglect, omitted to do so until the war broke out, her possession of the expediente and the absence of a grant are easily understood. It is unnecessary critically to examine the testimony by which the existence of a grant and its loss were sought to be established.

In this case there is neither a grant nor archive evidence. What, in the absence of even the latter evidence alone, is the nature of the testimony the court will exact before confirming a claim, is very explicitly laid down by the supreme court in U. S. v. Castro, 24 How. [65 U. S.] 350; and by the authority of that case I am governed. I may add that the fact that the expediente is not found in the archives, but in the claimant's possession, is far stronger evidence to my mind that it was not presented to the governor than the somewhat inconsistent statements of the witnesses who have attempted to prove that a grant was in fact issued. Nor is this conclusion materially weakened by the circumstance that at the end of the expediente is an order that the title issue, for that order has a very suspicious appearance, and there are no means of knowing with certainty at what time Pio Pico appended it to the expediente. The fact, too, that in her petition to the board the claimant herself stated that no title was issued owing to the political disturbances is of some significance, for, although the petition was amended on the allegation of a mistake or misapprehension of those in charge of the claim, it seems highly improbable that a mistake on so important a matter could have been committed, or the claimant could have failed to apprise her counsel of the fact that she had received a grant, and that it had been lost. The confirmation of this claim is urged on the authority of U. S. v. Alviso, 23 How. [64 U. S.] 318. But that case differs from this in the circumstance that Alviso, so far back as 1838, obtained from the governor permission to occupy the land solicited, while the proceedings were pending to perfect the title. The report of the case states that it was proved that his occupation commenced in 1840, and had continued for fourteen years, during which time he had been recognized as owner of the land. "No imputation was made against the integrity of his documentary evidence, and no suspicion existed unfavorable to the bona fides of his petition, or the continuity of his possession and claim."

In the case at bar the circumstances are very different. It is by no means satisfactorily proved that the petition and accompanying reports were ever laid before the governor. No grant is produced, nor any corroborative proofs from the archives. The only evidence offered is parol testimony, some of which comes from witnesses well

known to the court, and a brief order signed by Pio Pico, which may have been a very recent addition to the expediente. In Alviso's Case, the governor, after granting the provisional permission to occupy, naturally returned the papers to the petitioner for the reports, &c. required. It was therefore found in his possession, or that of the officers whose informes were asked for. But in this case, if the claimant's allegation be true, and the governor not only ordered the title to be issued, but actually signed and delivered it, there is no mode of accounting for the fact that the expediente was not retained by him, and archived as usual. The evidence of possession and occupation is far less strong and satisfactory than is Alviso's Case. Richardson swears that the claimant was occupying the land in 1844. Castro testifies that she was living there in 1845. Ma. B. Duarte de Valencia, the daughter of the claimant, swears to her reception of the grant, and that for about a year previous to its delivery she had occupied the land under a provisional license. But there is no record evidence whatever of any such provisional license. It certainly did not come from the governor, for the petition was sent to him for the first time in January, 1846, and the only action he is claimed to have taken on it was to issue the final title at once. It was not granted by the prefect, the subprefect, or the alcalde, for the expediente shows that no such grant was solicited; and that those officers merely made favorable reports to be laid before the governor. Pacheco swears that he gave her possession after the grant in his capacity as alcalde. But this statement seems quite incredible.

1st. The grant not having been approved, no judicial possession could regularly or legally be given.

2d. The grant being for a sobrante, no judicial possession could be given of it until the boundaries of all the colindantes were determined and the extent of the sobrante ascertained.

3d. The legal evidence of the giving of judicial possession is the formal record of the proceeding. No such record is produced, nor is its absence accounted for. The claimant has not even offered the testimony of any of the colindantes and neighbors, who must have been present at the ceremony. We have only the bare statement of the alcalde that he gave possession of the land at the time of the granting thereof.

It is probable, however, from all the testimony, that about the date of the first application to the alcalde and the certificate of the colindantes, that the land was vacant, the claimant went upon it, and erected a house, etc. This was in the summer of 1845. She had no written permission to do so, but it was probably not objected to because there seemed no obstacle to her obtaining the title. But that title she did not,

in all probability obtain. At least there is no evidence sufficient, according to the rules laid down by the supreme court, to justify me in pronouncing that the grant issued. If, then, the petition was never presented, or not acted on by the governor, I am unable to discover in the fact that she moved on the land, and occupied it for about a year prior to the conquest of the country, any substantial equities which require or authorize a confirmation. The case is, undoubtedly, a hard one for the claimant, or rather her heirs, for she is now deceased. She is said to have been of a reputable family. And the reports of the alcalde, the prefect, etc., show that she would have had no difficulty in obtaining the land. But if by accident or neglect she failed to get it, I see not how this court can remedy the misfortune.

My opinion is that the decree of the board rejecting the claim should be affirmed.

[The decree of this court was subsequently affirmed by the supreme court. See 3 Wall. (70 U. S.) 434.]